IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00154-WDM-BNB

KENNETH SMITH, SR.,

Plaintiff,

v.

DENVER, CITY AND COUNTY OF, a municipality,
MAYOR JOHN HICKENLOOPER,
GERRY WHITMAN, Chief of Denver Police Department, and
Denver Police Officers individuals,
BRILL, #00036,
BURDETT, #01067,
NUANES, #00109,
J. VINCENT, #01042,
JOHN DOE, Dispatcher, and
JANE DOE, Dispatcher,

Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the following motions:

1. **Defendants' Motion to Dismiss and Brief in Support of Motion to Dismiss**, filed on behalf of defendants Hickenlooper, Whitman, and the City and County of Denver [Doc. #23, filed 5/29/07] (the "City Defendants' Motion"); and

2. **Defendants Brill, Burdett, Nuanes, and Vincent** [sic] **Motion to Dismiss F.R.C.P. 12(b)(6)**, filed on behalf of the police officers [Doc. #26, filed 5/31/07] (the "Police Officers' Motion").

For the following reasons, I respectfully RECOMMEND that the motions be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff filed his Amended Complaint on March 16, 2007 [Doc. #8] (the "Complaint"). The Complaint alleges that an incident occurred on January 18, 2005, involving the plaintiff and Denver police officers. In the body of his Complaint, the plaintiff lists the following "facts" which he "extracted" from the police reports:

1. At approximately 4:30 a.m. on January 18, 2005, the plaintiff's neighbor, Carl Turner, called the Denver Police Department and reported that the plaintiff came onto his property; the

plaintiff was drunk; an argument ensued; the plaintiff "simulated a weapon from his waist area" and threatened to shoot Turner; and the plaintiff fled the residence and stole Turner's pick up truck.

2. A citizen called the Denver police to report that a suspicious person was hiding under a tree. The description of the person fit the plaintiff. Officer Nuanes drove to the area and saw a male lying face down under a tree. He saw Officer Brill approach the suspect with his handgun drawn. As Officer Brill and Officer Nuanes approached the plaintiff, they were joined by Officer Burdett.

3. Officer Nuanes issued three separate orders to the male to show his hands. The male refused the orders and kept his hands underneath his upper body. Officer Nuanes reported the following:

> Due to the initial car-jacking call involving a gun and the fact that he ran from the vehicle and attempted to hide from officers[,] I feared the male still had a gun and could easily turn over and shoot me and [the] officers. I told Officers Brill and Burdett that I had less lethal cover and that if he continued to disobey commands, that I was going to tase him. I again ordered him to show me his hands a fourth time. The male refused to show his hands, so I tased him from approximately eight feet away. While the taser was cycling, I told him to show me his hands and again he refused. I tased him a second time and continued with loud verbal commands. After the second cycle, the male complied with my orders and placed his hands away from his body. Ofc. Grill approached the male and handcuffed him.
>
> Once the male was in custody, I radioed for an ambulance and a supervisor to respond for the tasing. The male was searched and a Dept. of Corrections ID was found inside his wallet. The male was identified as Kenneth Smith 06/01/49.

*Complaint*, pp. 4-5.

3

The plaintiff asserts that Mr. Turner's report to the police was false, and that the pick up truck did not belong to Mr. Turner. Id. at p. 5, ¶ 12. The plaintiff further asserts that he is a diabetic; he had consumed alcohol on the night of the incident; he exited the pick up truck to vomit; due to the combined effects of the alcohol and his diabetes, he fell under the tree incapacitated and unconscious. Id. at p. 6, ¶ 14. After he was tased a second time, he regained consciousness and awakened to difficulty breathing, tightening of his muscles, and severe pain throughout his body. Id. at ¶ 15. Because he has a heart condition, he believed he was experiencing a heart attack. Id. There was no weapon taken into evidence. Id. at ¶ 17. All charges against the plaintiff were dropped on June 24, 2005. Id. at ¶ 13.

The Complaint asserts two claims pursuant to 42 U.S.C. § 1983. Claim One alleges that Officers Vincent, Nuanes, Brill, and Burdett and Denver Police Dispatchers Jane and John Doe violated the plaintiff's Fourth Amendment, Eighth Amendment, equal protection, and due process rights during his arrest. Id. at p. 7, ¶¶ 20-22. Claim Two alleges that the City of Denver, Mayor John Hickenlooper, and Police Chief Gerry Whitman violated the plaintiff's Fourth Amendment, Eighth Amendment, equal protection, and due process rights as a result of a custom or policy of the City of Denver.[1] Id. at pp. 8-9. The individual defendants are sued only in their individual capacities. Id. at p. 2, ¶ 5. The plaintiff seeks an unspecified amount of compensatory damages and three million dollars in punitive damages. Id. at p. 11.

---

[1] To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

## III. ANALYSIS

### A. Qualified Immunity

The defendants assert the defense of qualified immunity. Neither motion sets forth the correct standard of review for analyzing the defense of qualified immunity on a motion to dismiss.

Citing Sawyer v. County of Creek, 908 F.2d 663, 665 (10th Cir. 1990) and Workman v. Jordan, 32 F.3d 475 (10th Cir. 1994), the Police Officer Defendants assert that the plaintiff is subject to a heightened pleading standard once the issue of qualified immunity is raised. *Police Officer's Motion*, p. 6. However, the Tenth Circuit Court of Appeals held in 2001 that its heightened pleading requirement cannot survive the Supreme Court's decision in Crawford-El v. Britton, 523 U.S. 574 (1998). Currier v. Doran, 242 F.3d 905, 916 (10th Cir. 2001). As a result, since 2001 plaintiffs have not been required to meet a heightened pleading standard upon assertion of a qualified immunity defense in a motion to dismiss. Id. at 917. The plaintiff's Complaint need only be reviewed "under the customary motion to dismiss standard . . . ." Id.

In addition, all of the defendants maintain that once they assert a qualified immunity defense, the plaintiff bears a heavy two-part burden to produce evidence that (1) the defendants violated a constitutional or statutory right; and (2) the right was clearly established at the time of the defendants' alleged unlawful conduct. *City Defendants' Motion*, p. 8; *Police Officers' Motion*, pp. 7-8. This two-part burden, as all of the defendants' supporting case law establishes, is required from a plaintiff in response to a motion for summary judgment, not in response to a motion to dismiss.

5

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

When analyzing the issue of qualified immunity on a motion to dismiss, the court must first determine whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right. If the plaintiff has asserted such a violation, the court inquires whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). Accordingly, I now look to the Complaint's allegations to determine if the plaintiff has sufficiently alleged a violation of his constitutional rights.

**B. Eighth Amendment, Equal Protection, and Substantive Due Process Claims**

Construing the Complaint liberally, the plaintiff attempts to assert claims against all defendants for violating the plaintiff's Eighth Amendment, equal protection, and substantive due process rights. *Complaint*, p. 2, ¶ 5 and the second set of ¶¶ 1-2; p. 8, ¶ 4; p. 9, ¶ 10.

6

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The cruel and unusual punishment clause is concerned with conditions of confinement after a formal adjudication of guilt. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). The plaintiff does not challenge conditions of confinement. Consequently, the Eighth Amendment's prohibition against cruel and unusual punishment does not apply to the plaintiff.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted). The Complaint does not allege any facts that would invoke the equal protection clause.

The Substantive Due Process Clause cannot form the basis for a cause of action where, as here, the Fourth Amendment "provides an explicit textual source of constitutional protection" against the defendants' behavior. Albright v. Oliver, 510 U.S. 266, 273 (1994).

I respectfully RECOMMEND that the City Defendants' Motion and the Police Officers' Motion be GRANTED insofar as they seeks dismissal of the Eighth Amendment, equal protection, and due process claims.

### C. Fourth Amendment Claim Against the Police Officers

In Claim One, the plaintiff alleges that Officers Vincent, Nuanes, Brill, and Burdett arrested him, and subjected him to excessive force while arresting him, in violation of his Fourth Amendment rights. *Complaint*, p. 6, ¶ 16 and p. 7, ¶¶ 20-22.

If a police officer has probable cause to believe that a person has committed or is presently committing a crime, then he or she may effectuate a warrantless arrest of the individual without violating the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7 (1985). "The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause." Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir. 1985) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." Karr, 774 F.2d at 1031.

Here, the plaintiff affirmatively alleges that his neighbor, Mr. Turner, called the police and reported that the plaintiff had a gun and stole his car. *Complaint*, p. 5, ¶ 12 and p. 6, ¶ 17. Indeed, the plaintiff sued Mr. Turner for these actions. Id. at p. 7, ¶ 22. See also *Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge* [Doc. #9, issued 3/29/07] (dismissing Mr. Turner because the plaintiff did not allege that his actions were attributable to the state).

"When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." Pasiewicz v. Lake County Forest Preserve Dist., 270 F.3d 520, 525 (7th Cir. 2001). The Complaint does not allege any facts to support an inference that the police officers had evidence that Mr. Turner or his reported information were not credible. I respectfully RECOMMEND that the Police Officers' Motion be GRANTED insofar as it seeks dismissal of the allegations of Claim

One against the police officers for arresting him in violation of the Fourth Amendment. Because the plaintiff has failed to state a claim for violation of his Fourth Amendment rights based on the fact of his arrest, I need not determine whether the police officers are entitled to qualified immunity on this claim.

Excessive force claims that arise in the context of an arrest, investigatory stop, or other seizure are governed by the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). The Supreme Court describes the objective reasonableness standard as follows:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if in may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective

> one: the question is whether the officers' actions are objectively
> reasonable in light of the facts and circumstances confronting them,
> without regard to their underlying intent or motivation. An
> officer's evil intentions will not make a Fourth Amendment
> violation out of an objectively reasonable use of force; nor will an
> officer's good intentions make an objectively unreasonable use of
> force constitutional.

Id. at 396-397 (quotations and citations omitted).

Claim One alleges that Officer Nuanes tased the plaintiff twice while he was unconscious. Regardless of whether this claim can survive a challenge on its merits, the allegations are sufficient to plausibly support a Fourth Amendment excessive force claim.[2] Moreover, the plaintiff's right to be free from unreasonable force has been clearly established since at least 1989 under Graham. Therefore, Officer Nuanes is not entitled to qualified immunity on this claim. I respectfully RECOMMEND that the Police Officers' Motion be DENIED insofar as it seeks dismissal of Claim One's against Officer Nuanes for excessive force in violation of the Fourth Amendment.

The plaintiff does not allege any specific facts regarding excessive force by Officers Brill, Burdett, or Vincent. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). The Complaint contains only the following against these defendants:

> At all times during the events described above, the defendant
> Denver Police Officers were engaged in a joint venture. The
> individual officers assisted each other in performing the various
> actions described and lent their physical presence and support and
> the authority of their office to each other during the said events.

---

[2]The defendants assert statements from the police report as if they are facts upon which they can rely to argue the reasonableness of the officers' behavior. However, the plaintiff specifically disputes that he refused Officer Nuanes' order to show his hands and he asserts that he was not a threat to the police officers.

10

*Complaint*, p. 6, ¶ 18.

Alvarado provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." 493 F.3d at 1215 n.2. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007). The conclusory allegations of Claim One fall far short of the required factual allegations necessary to plausibly support a claim for excessive force in violation of the Fourth Amendment as against defendants Brill, Burdett, and Vincent.

I respectfully RECOMMEND that the Police Officers' Motion be GRANTED insofar as it seeks dismissal of the allegations in Claim One against Officers Brill, Burdett, and Vincent for excessive force in violation of the Fourth Amendment.

### D. Fourth Amendment Claim Against the City Defendants

Claim Two alleges that the City of Denver, Mayor John Hickenlooper, and Police Chief Gerry Whitman violated the plaintiff's Fourth Amendment rights as a result a custom or policy of the City of Denver.

Defendants Hickenlooper and Whitman are sued in their individual capacities. Therefore, they cannot be held liable in a section 1983 action unless they caused or participated in the alleged constitutional violation. McKee, 703 F.2d at 483. Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to

supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff does not allege any facts to show that defendants Hickenlooper and Whitman were directly responsible for the taser incident. To the contrary, he specifically alleges that the constitutional violation was the due to the custom and/or policy of the City of Denver. *Complaint*, p. 8, ¶¶ 5-8. I respectfully RECOMMEND that the City Defendants' Motion be GRANTED insofar as it seeks dismissal of the allegations in Claim Two against defendants Hickenlooper and Whitman.

As a municipality, the City and County of Denver may be sued under section 1983 only when "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978). A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers. Id. at 690. A custom is a "persistent and widespread ... practice[] of ... officials." Id. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)).

The plaintiff alleges that prior to the taser incident on January 18, 2005, the Denver Police Department implemented a policy to allow taser use only on suspects exhibiting active aggression, *Complaint*, p. 9, ¶ 9, and that his taser incident occurred because of customs and/or policies of the City of Denver to improperly investigate citizen complaints of police misconduct and to inadequately supervise and train its police officers. Id. at p. 8, ¶¶ 5-8. These allegations are

12

sufficient to state a claim against the City and County of Denver for violation of the plaintiff's Fourth Amendment rights. There is no qualified immunity for municipalities. <u>Owen v. City of Independence, Mo.</u>, 445 U.S. 622, 638 (1980). Accordingly, I respectfully RECOMMEND that the City Defendants' Motion be DENIED to the extent it seeks dismissal of the Fourth Amendment Claim as asserted against the City and County of Denver and the City Defendants in their official capacities.

## IV. CONCLUSION

I respectfully RECOMMEND that Defendants' Motion to Dismiss and Brief in Support of Motion to Dismiss, filed on behalf of defendants Hickenlooper, Whitman, and the City and County of Denver [Doc. #23, filed 5/29/07] be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED insofar as it seeks dismissal of the plaintiff's claims for violations of the Eighth Amendment, the Equal Protection Clause, and the Due Process Clause;

2. GRANTED insofar as it seeks dismissal of Claim Two's allegations of a Fourth Amendment violation as against defendants Hickenlooper and Whitman; and

3. DENIED to the extent it seeks dismissal of dismissal of Claim Two's allegations of a Fourth Amendment violation as against the City and County of Denver.

I further RECOMMEND that Defendants Brill, Burdett, Nuanes, and Vincent [sic] Motion to Dismiss F.R.C.P. 12(b)(6), filed on behalf of the police officers [Doc. #26, filed 5/31/07] be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED insofar as it seeks dismissal of the plaintiff's claims for violations of the Eighth Amendment, the Equal Protection Clause, and the Due Process Clause;

2. GRANTED insofar as it seeks dismissal of Claim One's allegations against the police officers for arresting the plaintiff in violation of the Fourth Amendment;

3. GRANTED insofar as it seeks dismissal of Claim One's allegations against Officers Brill, Burdett, and Vincent for excessive force in violation of the Fourth Amendment; and

4. DENIED insofar as it seeks dismissal of Claim One's allegations against Officer Nuanes for excessive force in violation of the Fourth Amendment.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 25, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge