IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00154-WDM-BNB

KENNETH SMITH, SR.,

　　Plaintiff,

v.

CITY AND COUNTY OF DENVER, *et al.*,

　　Defendants.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

Miller, J.

This matter is before me on a recommendation of Magistrate Judge Boyd N. Boland, issued January 25, 2008 (Docket No. 35) that a motion to dismiss filed by Defendants City & County of Denver ("Denver"), Mayor Hickenlooper, and Chief of Police Gerry Whitman (collectively, "City Defendants") (Docket No. 23) and a motion to dismiss filed by Defendants Officers Brill, Burdett, Nuanes, and Vincent (collectively, "Officer Defendants") (Docket No. 26) be granted in part and denied in part. Magistrate Judge Boland recommends that all of Plaintiff's claims be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) except his excessive force claim against Officer Nuanes and his Fourth Amendment claim against Denver. Both sides have filed timely objections to the recommendation (Docket Nos. 40, 42) and, therefore, are entitled to *de novo* review of the portions of the recommendation to which objection was made. 28 U.S.C. § 636(b);

PDF Final

*Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). I must construe Plaintiff's pleadings liberally and hold him to a "less stringent standard" because he is proceeding *pro se*. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))). Having reviewed the pertinent portions of the record in this case, I find that the recommendation should be accepted in part and rejected in part for the following reasons.

## Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Background

This action arises out of Plaintiff's arrest on January 18, 2005. The beginning of Plaintiff's complaint is comprised of "facts" he "extracted" from relevant police reports. Apparently, at around 4:30 a.m. Plaintiff was involved in an altercation with Carl Turner over a 1984 G.M.C. Sierra Pickup Truck. Plaintiff offered to purchase the truck for $200, which Mr. Turner refused. According to Mr. Turner, Plaintiff responded by stating "I'll shoot you, you don't know who you are messing with" while simulating a weapon from his waist area. (Compl. p. 3, ¶ 5.) Plaintiff then drove off in the G.M.C. Pickup Truck. Mr. Turner recounted the incident to Officer Vincent and reported the truck stolen.

At approximately the same time Officer Nuanes was in the area of E. 48th Avenue "on a suspicious party" with Officers Brill and Burdett. *Id.* p. 3, ¶ 7. Officer Nuanes was flagged down by a driver, later identified as Angelo Curruba, on the 4700 block of Holly Street. Mr. Curruba told Officer Nuanes that he had observed a man in a pickup truck turn off his lights when he saw the police car, abandon his truck in a parking lot, and run westbound. Mr. Carruba described the man as wearing a black stocking cap and a white and black plaid shirt. When Officer Nuanes approached the abandoned vehicle in the parking lot, he recognized that it matched the description of the vehicle involved in the car-jacking as reported by Mr. Turner. He called Officer Vincent to check the VIN numbers and confirm that it was the same vehicle. Thereafter, Officers Brill, Burdett, and Nuanes began searching the area for Plaintiff. Mr. Carruba then called back to relate that he had located Plaintiff; he told Officer

Nuanes that Plaintiff was laying underneath a tree just west of the 4700 block of Holly Street.

According to Officer Nuanes, he approached Plaintiff, who was laying face down under the tree with his hands under his body, and noted that he was wearing a black and white plaid shirt, which was a match for the descriptions provided by Mr. Turner and Mr. Carruba. All three officers then approached Plaintiff with at least Officer Brill drawing his handgun. Officer Nuanes ordered Plaintiff to show his hands three times but Plaintiff did not comply. Officer Nuanes reported that, based on Mr. Turner's report that Plaintiff had a gun and the fact that Plaintiff had attempted to run and hide from police officers, he feared that Plaintiff had a gun. Officer Nuanes advised Officers Brill and Burdett that he had "less lethal cover" and that if Plaintiff did not show his hands, Officer Nuanes would tase him. *Id.* p. (3)(a), ¶ 10. Thereafter, Officer Nuanes ordered Plaintiff to show his hands for the fourth time. After Plaintiff "refused to show his hands," Officer Nuanes tased Plaintiff from approximately eight feet. *Id.* Officer Nuanes again ordered Plaintiff to show his hands and after Plaintiff again failed to do so, he tased Plaintiff a second time. After the second tasing Plaintiff placed his hands away from his body. Officer Brill then handcuffed Plaintiff. It appears that Plaintiff was arrested in relation to the reported car-jacking.

Plaintiff brings two claims against Defendants. First, he alleges that the Officer Defendants violated his Fourth Amendment, equal protection, due process, and Eighth Amendment rights by their actions during his arrest. Second, he alleges that the City Defendants violated his Fourth Amendment, equal protection, due process, and Eighth

Amendment rights by having a custom or policy of such violations. In support of these claims, Plaintiff argues that his actions on January 18, 2005 were caused by his being incapacitated from consuming alcohol and his diabetic condition. He maintains that he exited the trunk near the 4700 block of Holly Street to vomit and then fell under the tree unconscious. He argues that he did not comply with Officer Nuanes's orders to show his hands because he was unconscious and that he only regained consciousness during the second tasing. Plaintiff alleges that he suffered harm by the tasings because he has a heart condition and when he awoke to the second tasing he thought he was having a heart attack. Finally, he argues that due to Denver's policy and custom of "inadequately and improperly investigat[ing] citizen complaints of police misconduct, acts of misconduct were . . . tolerated" by Denver and that Denver failed to adequately train its police officers in the correct and approved use of force. *Id.* p. 4, ¶¶ 5-6.

## Discussion

Magistrate Judge Boland recommends that all of Plaintiff's claims be dismissed for failure to state a claim upon which relief can be granted except for his claim against Officer Nuanes for excessive force in violation of the Fourth Amendment and his claim against Denver for a Fourth Amendment violation based on a custom or policy. First, Magistrate Judge Boland recommends that Plaintiff's claims under the Eighth Amendment, equal protection, and substantive due process against all Defendants should be dismissed. With respect to the Eighth Amendment, Magistrate Judge Boland found that the Eighth Amendment does not apply to Plaintiff because claims for

excessive force used during an arrest are analyzed under the Fourth Amendment and not the Eighth Amendment. See *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eight Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); *Graham v. Connor*, 490 U.S. 386, 393 n.6 (1989) (citing *Ingraham*, 430 U.S. at 671 n.40). Magistrate Judge Boland also concluded that Plaintiff had not alleged any facts that would evoke the Equal Protection Clause as Plaintiff did not allege that he was treated differently than any other person. See *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (holding that equal protection requires that States "treat like cases alike but may treat unlike cases accordingly." (citations omitted)). Finally, Magistrate Judge Boland determined that, because Plaintiff's claims can be brought pursuant to the Fourth Amendment, substantive due process analysis is inappropriate. See *Graham*, 490 U.S. at 395 ("*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." (emphasis in original)).

Magistrate Judge Boland also recommends that Plaintiff's claim that the Officer Defendants arrested him in violation of his Fourth Amendment rights should be dismissed because Plaintiff did not allege any facts that the officers knew or should have known that Mr. Turner's report of a car-jacking was not credible. Therefore, the Officer Defendants had probable cause to arrest Plaintiff for the car-jacking. See *Cortez v. McCauley*, 478 F.3d 1108, 1141 (10th Cir. 2007) ("[W]hen a victim of a crime

identifies the perpetrator, police may rely on that information, standing alone, to supply probable cause for an arrest unless they have some reason to think that the statement was not trustworthy." (citing *Easton v. Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985))); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (7th Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." (citations omitted)).

With respect to Plaintiff's excessive force claim, Magistrate Judge Boland recommends that Plaintiff's claims against Officers Brill, Burdett, and Vincent be granted because Plaintiff did not allege any specific facts regarding excessive force by these officers. He found that Plaintiff's allegation that Officers Brill, Burdett, Nuanes, and Vincent "were engaged in a joint venture[,] . . . assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events" were too conclusory to support a claim for relief against these defendants. (Rec. at 10–10 (quoting Compl. p. (3)(b), ¶ 18).); *see Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) ("[E]ven pro se litigants must do more than make conclusory statements regarding constitutional claims." (citing *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994))); *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). However, Magistrate Judge Boland recommends that the Officer Defendants' Motion to Dismiss be denied insofar as it moves for dismissal of Plaintiff's claim of excessive force against Officer Nuanes. Magistrate Judge Boland found that Plaintiff's allegation that he was unconscious during the tasing was "sufficient to plausibly support a Fourth Amendment

excessive force claim." (Rec. at 10.) Magistrate Judge Boland did note, however, that his determination did not reach whether Plaintiff's claims could survive a challenge on its merits.

With respect to Plaintiff's Fourth Amendment claims against the City Defendants, Magistrate Judge Boland recommends that they be dismissed insofar as they are asserted against Defendants Hickenlooper and Whitman. Magistrate Judge Boland found that Plaintiff failed to allege that either defendant caused or participated in the alleged constitutional violations. *See Butler v. Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("A supervisor is not liable under 1983 unless an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." (citing *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988))). However, Magistrate Judge Boland recommends that the City Defendants' Motion to Dismiss be denied insofar as it seeks dismissal of Plaintiff's Fourth Amendment claim against Defendant Denver. He determined that Plaintiff's allegations regarding Denver's customs and policies were sufficient to allege a Fourth Amendment violation by a municipality. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

1.  Preliminary Matter

Before addressing the parties' objections, I think it is appropriate to address the relevant standard in a motion to dismiss when the defendant has asserted a qualified immunity defense. Magistrate Judge Boland noted that neither the City Defendants nor the Officer Defendants stated the correct standard in their motions to dismiss, instead setting forth the standard for a motion for summary judgment. (Rec. at 5.) Defendants, in their objection, deny that they set forth an incorrect standard and maintain that Plaintiff has not met his burden under a qualified immunity analysis. Regardless of whether Defendants set forth the correct standard in their motions, I agree with Magistrate Judge Boland on the applicable standard of care.

Previously, the Tenth Circuit required "plaintiffs to meet a heightened pleading requirement once a defendant raises the defense of qualified immunity." *Currier v. Doran*, 242 F.3d 905, 911 (10th Cir. 2001). The heightened standard required plaintiffs to "include 'all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.'" *Id.* at 912 (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)). However, the Tenth Circuit held that the heightened pleading standard did not survive the Supreme Court's decision in *Crawford-El v. Britton*, 523 U.S. 574 (1998). *Id.* at 916. Instead, Plaintiff's complaint is reviewed under the "customary motion to dismiss standard." *Currier*, 242 F.3d at 917.

"'The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law.'" *Gann v. Cline*, __ F.3d __, 2008 WL 638787, at *2 (10th Cir. Mar. 11, 2008) (omission

in original) (quoting *Elder v. Holloway*, 510 U.S. 510, 512 (1994)). When a defendant has raised a qualified immunity defense in a motion to dismiss, I must first consider "whether the plaintiff's factual allegations show that the official's conduct violated a constitutional right." *Id.*; *accord Currier*, 242 F.3d at 917 ("[A] court must first determine whether the plaintiff has asserted a violation of federal law."); *Butler v. Rio Rancho Pub. Sch. Bd. Of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003). Second, if I determine that the plaintiff has asserted a violation of federal law, I must then "examine whether the right was clearly established" at the time of the alleged violation. *Gann*, 2008 WL 638787, at *2; *accord Currier*, 242 F.3d at 923 ("[T]he plaintiff must demonstrate to the court that the law on which the plaintiff relies was clearly established at the time of the defendant's actions."); *Butler*, 341 F.3d at 1200 ("[W]e next determine whether the law was clearly established'. . . ." (citation and quotation omitted)).

"'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283–84 (10th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001))); *accord Gann*, 2008 WL 638787, at *2 ("To be clearly established '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). Generally, this means that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff

maintains." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). However, because excessive force claims are determined in a case-by-case basis, "there will almost never be a previously published opinion involving exactly the same circumstances." *Casey*, 509 F.3d at 1284. Thus, "the Supreme Court has warned that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Tenth Circuit has adopted "a sliding scale to determine when law is clearly established. 'The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2006)). Therefore, "when an officer's violation of the Fourth Amendment is particularly clear" from general case law, the Tenth Circuit does not "require a second decision with greater specificity to clearly establish the law." *Id.*

"Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham V. Connor*, 490 U.S. 386, 395 (1989)). The "reasonableness" analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations omitted). The determination of reasonableness is a fact-specific inquiry, requiring analysis of various factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Id.* Furthermore, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Id.* (citations omitted).

2.  Defendants' Objections

Defendants object to Magistrate Judge Boland's recommendation that their motions to dismiss be denied with respect to Plaintiff's excessive force claim against Officer Nuanes and Fourth Amendment claim against Denver. With respect to the excessive force claim, Defendants argue that Plaintiff has not met his burden under a qualified immunity analysis and, therefore, Defendants are entitled to qualified immunity and the claim must be dismissed. I disagree. I agree with Magistrate Judge Boland that Plaintiff has sufficiently alleged facts that, if true, would constitute excessive force under the Fourth Amendment: he has alleged that he was unconscious during the tasing. Defendants' argument that the use of force was reasonable inappropriately focuses on the merits of Plaintiff's claim. If Plaintiff was indeed unconscious, as I must assume for purposes of this motion, and Officer Nuanes or others knew or should have known that Plaintiff was unconscious, as I liberally construe Plaintiff's pleading to allege,[1] then tasing him was likely unconstitutional excessive force under the Fourth Amendment. *See Hall*, 935 F.2d at 1110 ("A pro se

---

[1] Defendants also argue that Plaintiff's complaint does not allege that the officers knew or should have known that Plaintiff was unconscious. I disagree. Liberally construing Plaintiff's complaint and drawing all reasonable inferences in favor of Plaintiff, I find that nature of Plaintiff's complaint and his allegation that Officer Nuanes has described Plaintiff's actions as "passive resistance" are sufficient to allege that the officers knew of his unconscious state.

litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citing *Haines*, 404 U.S. at 520–21)); *Colorado Supreme Court*, 87 F.3d at 1164 (holding that, in a motion to dismiss, the court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff). Indeed, under the *Graham* factors, tasing someone while they present no danger or risk of flight is likely not objectively reasonable. *See Graham*, 490 U.S. at 396 (holding a Fourth Amendment analysis requires inquiry into various factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

Turning now to the second stage of the qualified immunity analysis, I conclude under the Tenth Circuit's sliding scale that it was clearly established that an officer may not tase an unconscious suspect. *See Casey*, 509 F.3d at 1284 (discussing the sliding scale). Although Plaintiff has not supplied a citation to a factually similar case, I think that it is "particularly clear from *Graham* itself" that it is a Fourth Amendment violation to tase an unconscious suspect.[2] *Id; see also Graham*, 490 U.S. at 396 (holding a Fourth Amendment analysis requires inquiry into various factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

---

[2] I note that Plaintiff cites to *Graham* in his response to the motions to dismiss and references the *Graham* factors, *i.e.*, "the suspect poses no immediate threat," and was "not actively resisting arrest or attempting to evade arrest." (Resp. at 4–5)

Defendants argue that *Graham* does not provide enough specificity to put officers on notice that they may not tase an unconscious suspect. I disagree. Although case law containing factually similar circumstances may be necessary when the conduct is less obviously a violation of the Fourth Amendment, it is not required when *Graham* provides sufficient warning to put a reasonable officer on notice that the conduct violates the law. See *Casey*, 509 F.3d at 1284. Defendants cite to various case law indicating that it is not a constitutional violation to tase, or even use deadly force, when a suspect actively resists arrests or indicates that he is armed. Those circumstances, however, are not present here. Taking all Plaintiff's allegations as true, Plaintiff was not actively resisting arrest, was not attempting to escape, was not threatening officers by stating he was armed, was not advancing towards officers; in fact, he was merely lying down unresponsive. Therefore, I conclude that Plaintiff has satisfied his burden under a qualified immunity analysis at the motion to dismiss stage.

Defendants' only objection to Magistrate Judge Boland's recommendation that their motions to dismiss be denied with respect to the claim against the Denver is that there was not underlying constitutional violation. As discussed above, I conclude that Plaintiff has alleged sufficient facts to assert a Fourth Amendment violation against Officer Nuanes.[3] Therefore, I also agree with Magistrate Judge Boland that Plaintiff has alleged sufficient facts to assert a Fourth Amendment claim against Denver.

3. Plaintiff's Objections

Plaintiff objects only to Magistrate Judge Boland's recommendation that his

---

[3] As discussed below, I also conclude that Plaintiff has alleged sufficient facts to assert a Fourth Amendment claim against Officers Brill and Burdett.

claim for excessive force against Officers Brill and Burdett be dismissed. Plaintiff argues that Officers Brill and Burdett were present during the tasing, were aware of Officer Nuanes's intention to tase Plaintiff, and did "nothing to stop this incident." (Pl.'s Obj. at 3.) He further asserts that it is a constitutional violation for an officer to "omit[] to perform an act which he is legally required to do." *Id.* at 5. Magistrate Judge Boland found that Plaintiff's allegations of a concerted action were too conclusory and undefined to assert an excessive force claim against Officers Brill and Burdett because the allegations did not include any specific factual allegations of excessive force by these officers. I agree with Magistrate Judge Boland that Plaintiff's allegations are insufficient to assert an excessive force claim against Officers Brill and Burdett. However, liberally construing Plaintiff's complaint, I find that although he did not expressly assert such as claim, the factual allegations in the complaint are sufficient to assert a failure to intervene claim against Officers Brill and Burdett. *See Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) ("As we have held, ' a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.'" (quoting *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996))).

In the second step of the qualified immunity analysis I must determine if this right was clearly established at the time of Defendants' actions. I conclude that it was. The Tenth Circuit has clearly held that "there is an affirmative constitutional duty to stop other officers from using unconstitutionally excessive force." *Id.* (citing *Mick*, 76 F.3d at 1136). Furthermore, as I have already noted above, it is clearly established that it

would be excessive force for an officer to tase an unconscious suspect if the officer knew or should have known that the suspect was unconscious. Therefore, I conclude that a reasonable officer would know that it was a constitutional violation to fail to intervene to protect someone from another officer's use of a taser gun on an unconscious suspect.

Accordingly, it is ordered:

4. The recommendation of Magistrate Judge Boyd N. Boland (Docket No. 35) is accepted in part and rejected in part.

5. The Motion to Dismiss filed on behalf of Defendants Hickenlooper, Whitman, and Denver (Docket No. 23) and the Motion to Dismiss filed on behalf of Defendants Brill, Burdett, Nuanes, and Vincent (Docket No. 26) are granted in part and denied in part.

6. Plaintiff's following claims remain pending: (a) his Fourth Amendment claim for excessive force brought against Defendant Officer Nuanes; (b) his Fourth Amendment claim for failure to intervene brought against Defendant Officers Brill and Burdett; and (c) his Fourth Amendment claim brought against Defendant City & County of Denver.

7. All remaining claims are dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) including: (a) his claims against all Defendants under the Eighth Amendment, equal protection, substantive due process; (b) his claims against Defendant Officers Brill, Burdett, Nuanes, and Vincent for arresting him in violation of the Fourth Amendment; (c)

his claims against Officer Vincent for excessive force; and (d) his claims against Defendants Hickenlooper and Whitman for a Fourth Amendment violation resulting from a City & County of Denver policy or custom.

DATED at Denver, Colorado, on March 18, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge